David L. McKeithen *v.* City of Stamford

James Cullinan *v.* City of Stamford

Baldwin, C. J., King, Murphy, Shea and Pastore, Js.

Argued June 12—decided July 12, 1962

*Daniel D. McDonald,* with whom were *Louis I. Iacovo* and, on the brief, *Albert L. Coles,* for the appellant (plaintiff) in the first case.

*Joseph J. Tooher, Jr.,* with whom, on the brief, was *P. Lawrence Epifanio,* for the appellant (plaintiff) in the second case.

*Isadore M. Mackler,* with whom, on the brief, were *Theodore Godlin* and *Gerald Kolinsky,* for the appellee (defendant).

KING, J.  The plaintiffs in these cases were members of the police force in Stamford.  On March 12, 1958, each plaintiff was arrested on a charge of breaking and entering and was bound over for trial

in the Superior Court. On that date, each, because of his arrest, was suspended from duty by the chief of police, Joseph W. Kinsella.[1] No question is raised as to the validity of the suspension for a period of ten days. The controversy is whether the suspension was valid and effective after the ten-day period. Each plaintiff claims it was not, because of the provisions of chapter 73 of the Stamford charter, and in this action seeks to recover pay for the entire period of his suspension except for the first ten days.[2] Each plaintiff was ready, willing and able to perform the duties of his position during his period of suspension, had he been allowed so to do.

It is the general rule, both in Connecticut and elsewhere, that in the absence of specific statutory provision to the contrary, "where a public officer is wrongfully suspended or expelled, he is entitled to recover the salary accruing during the period he is thus unlawfully removed from his office." *McDermott* v. *New Haven*, 107 Conn. 451, 453, 140 A. 826;

---

[1] The board of public safety, without hearing, voted to "continue the suspension until such time [as] the case against [the plaintiffs] is disposed of." Neither plaintiff made any request for a hearing before the chief of police or the board of public safety with respect to the suspension. Whether the board had the power to "continue the suspension" ordered by the chief of police is immaterial, since, as pointed out hereinafter, the suspension was itself legal without regard to its purported continuance by the board.

[2] Both plaintiffs, following public hearings on charges preferred on June 24 (after the termination of the criminal proceedings) by the chief of police to the board of public safety, were by that board found guilty of the charges and punished by dismissal from the force as of August 1, 1958. No claim is made by either of a right to recover pay accruing after the date of dismissal. Consequently, the outcome of the criminal proceedings, which resulted in a nolle in the case against McKeithen and in a verdict of guilty and sentence to prison in the case against Cullinan, is immaterial on this appeal.

43 Am. Jur. 163, § 380. As pointed out in the *McDermott* case, "[p]olice officers of . . . [a] city are public officers . . . [and the] salary provided by law for a public officer does not arise out of contract and is not dependent on the amount and value of the services rendered, but it belongs to him because the law attaches it to the office he holds. *Sibley* v. *State,* 89 Conn. 682, 685, 96 Atl. 161." Consequently, it is immaterial that neither of the plaintiffs, during the period of suspension, was assigned to any duties, or actually performed any duties, for the city of Stamford.

It is admitted by all parties that members of the police force of Stamford, including the plaintiffs, are members of the classified service within the meaning of the Stamford charter. Section 740 of the Stamford charter (1954), which is part of chapter 73, provides that, except as provided in chapter 72, no member of the classified service shall be suspended for more than ten days except after notice in writing of the grounds of suspension and an opportunity for a hearing before the personnel commission. 26 Spec. Laws 1024, § 9. It is under chapter 73 that the plaintiffs base their claims for compensation, pointing to the similarity of the provisions of chapter 73, and especially of § 740 thereof, to those before this court in *McDermott* v. *New Haven,* supra.

Chapter 72 of the Stamford charter is entitled "Discipline of Members of the Police and Fire Departments" and consists of §§ 720, 720.1, 721 and 722. 26 Spec. Laws 394, § 7; 25 Spec. Laws 470, 471. Section 720 provides that any charge made against any member of the police or fire department shall be directed, in writing, to the board of public safety (as distinguished from the personnel

commission, to which, under § 740 of chapter 73, charges against members of the classified service are preferred) and a copy served on the person against whom the charge is made, and that the board of public safety shall try the person at a public hearing. The section further authorizes several types of punishment which the board can impose after a finding of guilty. One punishment is forfeiture and withholding of pay for a period not to exceed thirty days from the date of suspension; another punishment is dismissal from office, which was the punishment ordered here in each case.

The provisions of chapter 72, rather than those of § 740 of chapter 73, control in these cases. Chapter 72 applies to members of the classified service who are in the fire and police departments. Section 740, by specifically excepting from its scope any inconsistent provisions of chapter 72, applies only to other members of the classified service. Sections 720 and 740 must be reconciled so far as possible, and each given a reasonable construction. See *Hutchison* v. *Board of Zoning Appeals*, 140 Conn. 381, 385, 100 A.2d 839. Obvious considerations of public safety suggest the desirability, if not necessity, of treating members of the police and fire departments in a different manner from city employees in general. *Matter of Cugell* v. *Monaghan*, 201 Misc. 607, 611, 107 N.Y.S.2d 117; see also cases such as *Riley* v. *Board of Police Commissioners*, 147 Conn. 113, 119, 157 A.2d 590.

The special disciplinary procedure established for members of the police and fire departments under chapter 72 does not give to, nor withhold from, the chief of police any right of suspension. Such a right is not mentioned. Indeed, the right of sus-

pension impliedly accorded the board of public safety under § 720, in connection with the express authority to withhold and forfeit pay, is solely a form of punishment after a determination of guilt with respect to a charge preferred to the board in writing and on which it has held a public hearing pursuant to the provisions of that section. The difference between suspension as a penalty or punishment after a hearing and a determination of guilt by the board of public safety, under the provisions of § 720, and a temporary suspension by the chief of police pending the outcome of a criminal prosecution, is crucial in these cases and is rather clearly brought out in the recent case of *Brenner* v. *New York,* 9 N.Y.2d 447, 451, 174 N.E.2d 526. See, also, cases such as *Avery* v. *Studley,* 74 Conn. 272, 283, 50 A. 752, and *Sullivan* v. *Martin,* 81 Conn. 585, 589, 71 A. 783. Any power of temporary suspension without a hearing which the chief of police had is not conferred by chapter 72 but, if it exists at all, must be found elsewhere.

In the absence, as here, of statutory restrictions, a chief of police who is given general administration, supervision and discipline of a police department has a right to suspend, for a reasonable time, an officer who, as in the case of each of these plaintiffs, is awaiting trial on a criminal charge such as that of breaking and entering. Such a power is almost necessary to ensure the proper operation of a police department. *LaBonte* v. *Berlin,* 85 N.H. 89, 95, 154 A. 89. Under § 430 of the Stamford charter (25 Spec. Laws 429), the chief of police was responsible for the general administration, supervision and discipline of the police department. Furthermore, the "Manual of Rules and Regulations - Stamford Police Department - 1955," which was pub-

lished by the board of public safety and was in effect during the period in question, and a copy of which each plaintiff had, provided (p. 52) that only the chief of police has the power of suspension, that suspension shall deprive the policeman of all official powers, and that he must not present himself as a member or employee of the department during the period of suspension. In the case of each plaintiff, the chief of police had the power of suspension, and the duration of the suspension was not limited to any specific time, nor was the power conditioned either on a hearing within any particular time or in any other respect.

It is true, of course, that a suspension, which, as was the one imposed by the chief of police here, is prior to a hearing or to an adjudication of guilt and is in no sense a punishment, must be reasonable and cannot be used as a substitute for the power, given to the board of public safety under § 720, to punish, by suspension without pay or by dismissal, upon a finding of guilty under a charge duly preferred, after notice and public hearing. *LaBonte* v. *Berlin,* supra; see cases such as *State ex rel. Hosford* v. *Kennedy,* 69 Conn. 220, 226, 37 A. 503; *State ex rel. Rylands* v. *Pinkerman,* 63 Conn. 176, 195, 28 A. 110.

There is no claim by either plaintiff that the action of the chief of police was arbitrary, unreasonable or improperly motivated. See cases such as *Sullivan* v. *Martin,* supra, 591, and *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 117, 157 A.2d 590. The action of the chief in suspending the plaintiffs pending the outcome of their criminal trials was wholly reasonable, if indeed not essential. *McNiff* v. *Waterbury,* 82 Conn. 43, 46, 72 A. 572. The plaintiffs' claim that their suspension was il-

legal because the chief's power of suspension was limited in duration to ten days and their suspension became a nullity after the first ten days is without merit.

The case of *McDermott* v. *New Haven,* 107 Conn. 451, 140 A. 826, is of no help to either plaintiff. In that case, the charter of New Haven gave the chief of police the power to suspend a member of the police department without pay, but it specifically provided that the suspension could not continue more than ten days without action by the police commissioners after a hearing on charges preferred in writing, a copy of which had to be left with the member at least forty-eight hours before the hearing. It was properly held that after ten days the suspension, there having been no action by the police commissioners, became a nullity, and that the plaintiff was entitled to recover his salary during the period of suspension after the first ten days. To the same general effect is the earlier case of *Thompson* v. *Troup,* 74 Conn. 121, 123, 49 A. 907. In the *McDermott* and *Thompson* cases, there were statutory conditions precedent to a valid suspension, and those conditions were violated in material respects. Consequently, the purported suspensions were nullities.

The suspension of neither plaintiff was shown to be arbitrary, unreasonable, or contrary to any statutory provision. Each was properly under suspension, up to the date of his dismissal, by virtue of the original action of the chief of police on March 12, 1958. It follows that neither plaintiff was entitled to pay during the period of his suspension.

There is no error in either case.

In this opinion the other judges concurred.